FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 2 5 2005
9:10
Betty A. Griess, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PROTECTION & ADVOCACY SYSTEM, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID FREUDENTHAL, in his official capacity as Governor of the State of Wyoming; DEBORAH FLEMING, in her official capacity as Director of the Wyoming Department of Health; and PABLO HERNANDEZ, in his official capacity as th e Administrator of the Wyoming State Hospital, <br><br> Defendants. | Case No. 05-CV-014-J |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

The above-entitled matter comes before the Court on the Defendants' Motion to Dismiss. The Court, having reviewed the motions and the materials filed in support thereof and in opposition thereto, having heard oral arguments and being otherwise fully advised in the premises, **FINDS** and **ORDERS** as follows:

**Factual Background**

The background of this case began in 1994 with the initiation of suit by Protection & Advocacy System, Inc. (hereinafter P&A) on behalf of several named patients within the Wyoming State health care system. That case was captioned *Cris S., et al. v. Jim Geringer, et al.*, Docket No. 94-CV-311.[1] The *Cris S.* Lawsuit alleged violations of statutory and civil rights under both state and federal law. That case involved years of litigation, which on January 24, 2002 resulted in a settlement agreement (the Agreement) between the parties. The Agreement provided a framework by which the State of Wyoming and P&A would be able to avoid unnecessary litigation in the future and to help insure that the rights of the mentally ill in Wyoming are protected.

On January 10, 2005, P&A filed a complaint in this Court for injunctive and declaratory relief against David Freudenthal in his official capacity as Governor of Wyoming, Deborah Fleming , in her official capacity as Director of the Wyoming Department of Health, and Pablo Herdandez in his official capacity as the Administrator of the Wyoming State Hospital (collectively the Defendants). P&A alleges four causes of

---

[1]Protection and Advocacy System Inc., is a corporation formed under Congressional authority to seek the improvement of the Wyoming public health care system, and to help enforce several Congressional mandates including the Protection and Advocacy for Mentally Ill Individuals Act (PAMII), 42 U.S.C. § 10803, *et seq.*

action.

The first claim of relief is brought under 22 U.S.C. § 2201, *et seq.*, alleging that the Defendants have breached the Agreement. The second claim of relief comes under 42 U.S.C. § 1983, alleging that the Defendants have violated the civil rights of individuals with developmental disabilities and mental illness, who are represented by P&A. The third cause of action alleges, under 42 U.S.C. § 1983, that the Defendants have violated the civil rights of P&A in retaliating against P&A for attempting to access to patient records. Particularly P&A complains that the Defendants have unlawfully delayed access to patient records, and that the Defendants began charging a fifty cent per page copying fee. The Plaintiff's fourth cause of action comes under 29 U.S.C. § 701, alleging that the Defendants have unlawfully discriminated against qualified individuals with disabilities in violation of Section 504 of the Rehabilitation Act. The Plaintiff's fifth cause of action alleges that the Defendants have discriminated against individuals with disabilities in violation of the Americans with Disabilities Act, 43 U.S.C. § 12101, *et seq.* (ADA).

The Defendants have filed a motion to dismiss arguing that the Plaintiff lacks standing and that the Plaintiff has failed to state a claim on which relief can be granted. The Defendants' motion comes under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6). The Plaintiff opposes this motion.

3

## Standard of Review

a.    12(b)(1)

The party invoking federal jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *United States ex. rel. Holmes v. Consumer Ins. Group*, 279 F.3d 1245, 1249 (10th Cir. 2002). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may take two forms.  When a defendant makes a facial attack on the complaint's allegations, which challenges the sufficiency of the complaint, the district court will accept the plaintiff's allegations as true. *Cal. Cas. & Fire Ins. Co. v. Brinkman*, 50 F. Supp. 2d 1157, 1161 (D. Wyo. 1999). If, however, the defendant goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends, the district court will not presume the truthfulness of the plaintiff's allegations and has wide discretion to consider other documents to resolve the jurisdictional question. *Id.*

b.    12(b)(6)

A federal district court may dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir. 2001).  The district court

4

must assume plaintiff's allegations are true and construe them liberally in the light most

favorable to him. *Conley*, 355 U.S. at 45-46; *Grossman v. Novell, Inc.*, 120 F.3d 1112,

1118 (10th Cir. 1997). The district court's function on a Rule 12(b)(6) motion is to assess

whether the plaintiff's complaint alone is legally sufficient to state a claim on which relief

may be granted. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236

(10th Cir. 1999). In so assessing, the district court is not to weigh potential evidence that

might be presented nor determine who will ultimately prevail; rather, the issue is whether

the plaintiff is entitled to offer evidence to support his claim. *Scheur v. Rhodes*, 416 U.S.

232, 236 (1974).

## Discussion

The Defendants argue that the Plaintiff does not have standing before the Court. In

particular the Defendants contend that the Plaintiff has made conclusory allegations that

fail to establish an injury to any of the members represented by the Plaintiff. The Plaintiff

alleges that it has authority under several Congressional mandates, including the

Protection and Advocacy for Mentally Ill Individuals Act (PAMII), 42 U.S.C. § 10805.

This case involves two separate discussions regarding standing. First we must

determine whether P&A has standing to bring actions on its own behalf. Second, we must

determine whether P&A has properly alleged associational standing to bring claims on

behalf of its members.

      c.     Individual Standing

An organization has standing to sue on its own behalf if the organization itself can satisfy the irreducible constitutional minimum requirements and prudential concerns do not point to the need for judicial restraint. *See Warth v. Seldon*, 422 U.S. 490, 511(1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."); *see, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (applying "same inquiry as in the case of an individual" to determine that nonprofit equal housing opportunity corporation had suffered injury in fact in form of "impaired . . . ability to provide counseling and referral services for low- and moderate-income homeseekers").

In order for P&A to have standing it must satisfy the Article III requirements of standing. To demonstrate standing the Plaintiff must allege that it has suffered, or will imminently suffer  injury in fact and that the injury is fairly traceable to to the Defendants' conduct and that a favorable federal court decision is likely to redress the injury. *See Bennett v. Spear*, 117 S. Ct. 1154, 1163 (1997); *Northeastern Florida Contrators v. Jacksonville*, 508 U.S. 656, 663 (1993); *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992). These constitutional requirements are immutable. *Lujan*, 504 U.S. at 560. They represent the absolute minimum which a plaintiff must show to bring a claim before a federal court.

In order to have a case or controversy the Plaintiff must be able to establish an injury in fact. An injury in fact is "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983). The demonstration of an injury in fact is foundational to the Article III standing requirements and has been termed an "irreducible minimum." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982).

P&A cites several actions that could be construed as being brought on its own behalf. In particular, P&A has alleged that the Defendants have retaliated against them in violation of Article II Section 2.02 of the Agreement, which provides:

> Protection and Advocacy System, Inc....is an independent non-profit corporation whose independence from the State of Wyoming control, appointments and budget restrictions is critical to the monitoring and other safeguard provisions contemplated by its authorizing legislation. The State of Wyoming agrees that it shall take no retaliatory action against P&A.

P&A has alleged that the Defendants have retaliated against them for exercising their

7

statutory and contract rights to access patient records.[2] Furthermore, P&A alleges that the

Defendants have deprived P&A of "full, complete, and meaningful access to patient and

other records as state facilities and institutions as mandated by PAMII and DDA."[3] In

---

[2]The Plaintiff has not alleged any particular incidents.

[3]42 U.S.C. § 10805(a)(4)(A-C) provides:

(a) A system established in a State under section 103 [42 USCS § 10803] to protect and advocate the rights of individuals with mental illness shall--
***
(4) in accordance with section 106 [42 USCS § 10806], have access to all records of--
   (A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
   (B) any individual (including an individual who has died or whose whereabouts are unknown)--
      (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
      (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
      (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect; and
   (C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever--
      (i) such representative has been contacted by such system upon receipt

particular, P&A feels that the Defendants' recent imposition of a $.50 charge per page of copying is retaliatory in nature and is in violation of the Agreement. Moreover, the Plaintiff argues that the Defendants' actions have deprived P&A of full, complete and meaningful access to patient records in violation of 42 U.S.C. § 15001 *et seq.* and PAMII.

A breach of the *Cris S.* Agreement would give P&A standing before this Court. We are satisfied that the allegations presented within the Complaint satisfy the minimum Constitutional requirements for P&A's standing in its individual capacity. The protected legal right, in this case, is to be free from retaliation by the State of Wyoming pursuant to the Agreement. *See Tennessee Electric Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 137-138 (1939) (holding that an invasion of a contractual right can confer standing).   Moreover, the Plaintiff has a statutory right to full, complete and meaningful access to patient files pursuant to PAMII. *See Federal Election Commission v. Akins*, 118 S. Ct. 1777 (1998)(holding that denial of a statutory right to information was an injury sufficient to satisfy Article III); *see also infra* note 3.

The Plaintiff must also demonstrate that the asserted injury was the consequence of

---

of the name and address of such representative;
(ii) such system has offered assistance to such representative to resolve the situation; and
(iii) such representative has failed or refused to act on behalf of the individual[.]

the defendants' actions and that the prospective relief will remove the harm. *See United States v. Hays*, 515 U.S. 737, 743 (1995); *and Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984). These requirements are distinct hurdles, both of which must be met for a federal court to hear a case. *Lujan*, 504 U.S. at 560-561. Here the Plaintiff has properly alleged that the Defendants, and the agencies they represent, are the primary cause of the alleged injury. This is an obvious conclusion given that the parties to this lawsuit, are also the same parties to the Agreement that has been allegedly breached by the Defendants. Moreover, the alleged impediments to the Plaintiff's right to full and complete access to patient records could only emanate from the Defendants, because they are the sole custodians of those records. Furthermore, the Court would be in a position to remove the alleged harm through injunctive and declaratory relief.

    d.    Associational Standing

For P&A to bring a suit on behalf of its members it must satisfy the associational standing, as discussed in *Hunt v. Washington State Apple Growers Commission*, 432 U.S. 333 (1977). An organization's standing to sue on behalf of its members can derive from either judicial discretion or a congressional grant. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. In *Hunt* the Supreme Court announced a three part test for associational standing, stating:

10

> an association has standing to bring suit on behalf of its members when: (a)
> its members would otherwise have standing to sue in their own right; (b) the
> interests it seeks to protect are germane to the organization's purpose; and
> (c) neither the claim asserted nor the relief requested requires the
> participation of individual members in the lawsuit.

*Hunt*, 432 U.S. at 343.

For P&A to have standing to sue on behalf of its members, it must show that one of its

members would have standing in their own right, namely that a member has suffered an

injury in fact, that the Defendant's actions caused the injury, and that the Court can

redress the wrong. *See Lujan*, 504 U.S. at 560; *see also infra* discussion above.

The third prong of the *Hunt* test is considered a prudential limitation as opposed to

a constitutional requirement. *United Food and Commercial Workers Union v. Brown*

*Group, Inc.*, 517 U.S. 544 (1996). Congress may grant an organization standing to sue if

the first two prongs of the test are satisfied. In this case, P&A is acting under the auspices

of the Protection and Advocacy for Mentally Ill Individuals Act (PAMII), 42 U.S.C. §

10805. The cases considering standing challenges in the context of protection and

advocacy organizations have not considered the third prong as critical to standing. *See,*

*e.g., Doe v. Stincer*, 175 F.3d at 883; *Pennsylvania Protection and Advocacy, Inc. v.*

*Houston*, 136 F. Supp.2d 353, 364 (E.D.Pa. 2001) (considering the claim of a protection

and advocacy organization established under similar legislation to protect persons with

developmental disabilities); *Risinger v. Concannon*, 117 F. Supp.2d 61, 68-69 (D.Maine 2000). Thus, the Court will focus its attention and analysis on the first two prongs of the *Hunt* test.

The first prong of the *Hunt* test imposes the same standing requirements on members of an organization as it does on any individual. *See infra* discussion above. For a member to have standing, and therefore invest an organization with standing, such member must meet the constitutionally mandated requirement of an injury in fact. The Supreme Court has held:

> Article III, of course, limits Congress' grant of judicial power to "cases" or "controversies." That limitation means that respondents must show, among other things, an "injury in fact" -- a requirement that helps assure that courts will not "pass upon . . . abstract, intellectual problems," but adjudicate "concrete, living contests between adversaries." *Coleman v. Miller*, 307 U.S. 433, 460, 83 L. Ed. 1385, 59 S. Ct. 972 (1939) (Frankfurter, J., dissenting);... *Lujan*, 504 U.S. at 560-561.

*Akins*, 524 U.S. at 21(citations partially omitted).

The Defendants argue that the Plaintiff has failed to establish what harm has befallen one of its members. Instead, the Defendants contend, the Plaintiff has asserted vague and conclusory allegations of a variety of statutory and common law injuries. The Defendants argue that the Plaintiff has failed to demonstrate that one of its members has suffered an injury in fact, and therefore are unable to satisfy the first prong of the *Hunt*

12

test. The Plaintiff argues that the first prong of the *Hunt* test is satisfied because "any patient at the Wyoming State Hospital and any Wyoming citizen receiving mental health services within the State could bring suit for the same deprivations or wrongs that have been alleged in detail[.]"

The Plaintiff's pleadings have constructed a legal Potemkin village.[4] The allegations made in the Plaintiff's complaint assert injuries and deprivations, however, like a Potemkin village's buildings, the Plaintiff's allegations lack substance and particularity. The Plaintiff alleges that "any" of its members could bring action based on the injuries alleged, however, the Plaintiff fails to establish that any of its members have actually been injured, what particularized injuries they might have suffered, and when these injuries happened. It is well established that speculative injury does not satisfy the constitutional requirement for an actual injury. *See Lujan*, 504 U.S. at 367; *see also Los Angeles v. Lyons*, 461 U.S. 95 (1983).

The right to sue on behalf of its members does not relieve P&A of its obligation to satisfy *Hunt's* first prong by showing that one of its constituents otherwise had standing

---

[4]Potemkin: The name of Grigory Aleksandrovich Potemkin (1739-91), favorite of Empress Catherine II of Russia, attributed to designate the sham villages reputed to have been erected, on his orders, for Catherine's tour of the Crimea in 1787. Oxford English Dictionary (2nd ed.1989).

13

to sue. *Doe v. Stincer*, 175 F.3d 879, 886-887(5th Cir. 1999) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). It is not necessary that the Plaintiff actually name individuals, or sue in the name of the injured individual member or members, but that does not relieve the Plaintiff of establishing an actual injury caused by the Defendant. *See Doe v. Stincer*, 175 F.3d at 884-885. In *Doe* the Fifth Circuit held that an affidavit stating that there were "many" individuals who were either denied access to their mental health records or who were discouraged from trying to do so, was insufficient to confer representative standing on the protection and advocacy organization. *See Id.* at 887.

Looking to the Plaintiff's Complaint clearly demonstrates its failings.  At paragraph 25 of the Complaint the Plaintiff alleges that: "The actions of the Defendants...have caused individuals with developmental disabilities and mental illness, who are represented and advocated on behalf of the Plaintiff ...to suffer deprivations of federally protected rights... ." This paragraph comes under the second claim for relief pursuant to 42 U.S.C. § 1983. Noticeably absent from this paragraph, and the Complaint as a whole, is any allegation of a specific harm befalling a specific member of their organization. *See Tennessee Protection and Advocacy, Inc. v. Board of Education of Putnam County, Tennessee*, 24 F.Supp. 2d 808, 816 (1998). This deficiency is found throughout the Complaint. At paragraph 40 of the Complaint the Plaintiff alleges:

14

Defendants have discriminated against qualified individuals [under 29
U.S.C. § 701] by engaging in conduct...that includes, but is not necessarily
limited to, the following:

    a.   Denying qualified individuals with a disability the opportunity
         to participate in or benefit from the programs and services of
         the Wyoming Department of Health

    b.   Providing a qualified individual with a disability an aid,
         benefit, or service that is not as effective as that provided to
         others.

    c.   Using criteria or methods of administration that have the
         purpose or effect of defeating or substantially impairing
         accomplishment of the objective of the recipient's program
         with respect to a qualified individual with a disability.

    d.   Otherwise limiting a qualified individual with a disability in
         the enjoyment of any right, privilege, advantage or
         opportunity enjoyed by others receiving aid, benefits, or
         services.

These allegations, again, fail to provide the necessary information to bring suit on behalf

of its membership, notably the absence of an allegation that one of its members has

suffered a cognizable injury. *See Sierra Club v. Morton*, 405 U.S. 727 (1972).

    The Plaintiff seems to intimate that PAMII, by its own terms, confers the necessary

standing for the Plaintiff to bring suit on behalf of its members.[5] The Plaintiff relies on

---

    [5]Simply put, Congress can override prudential barriers to standing, e.g. bringing
third party claims. *See United Food &Commercial Workers Union Local 751 v. Brown
Group, Inc.*, 517 U.S. 544 (1996). However, Congress cannot modify or abrogate the
Constitutional requirements for standing, e.g. injury. *See Bennett v. Spear*, 117 S. Ct.
1154, 1161 (1997); *and Raines v. Byrd*, 521 U.S. 811(1997).

both *Doe v. Stincer* and *Risinger v. Concannon*, 117 F.Supp.2d 61 (D. Me. 2000) for this proposition.

In *Risinger*, a disabilities rights organization sought to sue on behalf of two minor children. The plaintiffs alleged that the two minor children had not received the screening, case management and services that the defendants had an obligation to provide. *Id.* at 70. The plaintiffs identified the defendants' policies, practices and procedures as the cause of the injuries and that the injunctive and declaratory relief sought would redress the injury adequately. *Id.* The district court was satisfied that the plaintiffs had alleged enough to satisfy the standing requirements. *Id.* at 71. The court held that DDA and PAMII grant standing to sue on behalf of its membership, that does not relieve it of its obligation to properly allege and satisfy Article III standing requirements. *Id.* at 69-70. The Plaintiff has read this case too broadly. Nothing in this case suggests that PAMII produces automatic standing. In fact, the court in *Risinger* applied a rigorous Article III standing analysis to the plaintiffs' allegations; only then finding standing. Here the Plaintiff has not identified a single member that has suffered an injury in fact, unlike the plaintiff in *Risinger*. *See Morton*, 405 U.S at 739 (holding that: "[A] mere interest in a problem, no matter how long standing the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient.").

16

Compare the Plaintiff's allegations in this case with those made in *Doe v. Stincer*. In *Doe* the plaintiffs relied on an affidavit from the director of the advocacy center's PAMII program, which alleged two injuries. The first allegation asserted that "many Floridians who want to see their medical health records are denied access... ." *Doe v. Stincer*, 175 F.3d at 887. The second allegation in the affidavit averred that "on August 1, 1997, the Advocacy Center received a complaint from an individual that she had been denied access to her treatment records... ." *Id.* The Fifth Circuit held that such allegations did not satisfy the injury-in-fact requirement for standing. *Id.* The Plaintiff in the instant case has not even provided this Court with a similar conclusory affidavit. Instead the Plaintiff has filed a conclusory, and repetitious Complaint that fails to establish that one of its members has standing to bring a claim on which to properly assert standing.

The Plaintiff claims that "any patient at the Wyoming State Hospital and any Wyoming citizen receiving mental health care services within the State could bring suit for the same deprivations or wrongs that have been alleged in detail in Plaintiff's Complaint." Plaintiff's Opposition to Defendants' Motion to Dismiss at 11. It is true that any patient at the Wyoming State Hospital and any Wyoming citizen receiving mental health care services within the State *could* bring suit, but those same persons would first have to demonstrate that they actually suffered an injury. The Plaintiff's Complaint has

17

failed to establish that it has organizational standing on behalf of its members.

### Conclusion

The Plaintiff has demonstrated that it has standing to bring claims on its own behalf. Specifically, the Plaintiff claims that the Defendants have not provided full and complete access to patient records and that the Defendants have breached the Agreement. However, the Plaintiff has not established that it may bring suit on behalf of its members, because it has failed to allege that an identifiable member has suffered a legal injury.

Therefore, and for the foregoing reasons, it is

**ORDERED** that the Plaintiff's Second, Fourth and Fifth Claims for relief as enumerated in the Complaint, insofar as they relate to the Plaintiff's organizational standing, are **DISMISSED**. It is further

**ORDERED** that the Defendant's Motion to Dismiss as to the Plaintiff's First and Third claim for relief as enumerated in the Complaint, insofar as they relate to the Plaintiff's individual standing, is **DENIED**.

Dated this 25th day of April, 2005.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE

18